IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

LORI ANN WILSON,

     Plaintiff,

                             3:11-cv-00725-PK

                             FINDINGS AND
                             RECOMMENDATION

UNITED STATES DEPARTMENT OF
EDUCATION, *et al.*,

     Defendants.

_____

PAPAK, Judge:

     Pro se plaintiff Lori Ann Wilson originally brought this action against the U.S.

Department of Education ("DOE"), Diversified Collection Services Inc. ("Diversified"), and

"Does 1-100," arising out of the government's attempts to collect student loan debts by seizing

Wilson's federal income tax refunds.   Wilson asserts claims for "taking of federal income tax

refund," "loss of business opportunity," "loss of income," "loss of future earnings," "emotional

distress," and "R.I.C.O.". (Compl., #2.) Wilson dismissed Diversified from this action, leaving

the DOE as the sole named defendant. (#53.) The DOE now moves to dismiss this action under

Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and standing, and under Fed. R.

Page 1 - FINDINGS AND RECOMMENDATION

Civ. P. 12(b)(6) for failure to state a claim. (#43.)   For the reasons described below, the DOE's

motion should be granted.

## BACKGROUND

The following facts, except where otherwise noted, derive from Wilson's complaint.

While living in Nevada, Wilson entered into several government-guaranteed student loan

contracts in 1986 and 1987.  (Compl., #2, at 2.)  Wilson consolidated these loans in 1988, which

had a combined principal amount of $9,100.  *Id.*  In August 1988, Wilson made a single payment

of $8,700.  *Id.*  In October 1988, she made a final payment of $500.  *Id.*  Wilson apparently

communicated with the loan servicer in late 1988 and early 1989  "in an attempt to properly

apply the final payment."  *Id.*   Wilson alleges that the DOE "received payment in full for the

underlying loan . . . ."  *Id.* at 3.

In 1998, ten years after Wilson paid off her loans, a government agency "seized"

Wilson's 1997 federal income tax refund.  *Id.*  Two years later, in 2000, Wilson managed to

ascertain that the DOE was the agency that seized her refund.  *Id.*  Soon thereafter, various

collection agencies purporting to represent the DOE demanded repayment of the entire loan

amount– $9,100– as well as over $14,000 in fees and penalties.  *Id.*  The DOE continued seizing

Wilson's federal income tax refunds on an irregular basis, taking a total of $5,103.81.  *Id.* at 3.

Wilson "made several written demands for return of these funds."  *Id.*   As a result of being

deprived of this money, Wilson, who is a licensed insurance agent in 50 states, lost the

opportunity to establish an independent insurance agency.  *Id.* at 6.

Wilson alleges that the DOE waited ten years after receiving her loan payments before

making additional demands for payment in order to thwart her attempt to document that she had

already satisfied her loan obligations. *Id.* at 3-4. In those intervening years, both the original

lender and Wilson's bank from which she made loan payments had gone out of business. *Id.* at

4.

Sometime after Wilson paid off her loan in full, the DOE "continuously entered

derogatory information" into Wilson's credit bureau reports stating that she owed over $20,000

to the DOE.[1] *Id* at 4,6. Wilson alleges that these negative reports have affected her family and

social life, caused potential employers to deny her employment, and "greatly reduced" her

income, which was two to three times higher before the DOE made incorrect credit reports. *Id.*

Additionally, the DOE's conduct– withholding Wilson's tax refund and making

erroneous reports to credit bureaus– has prevented Wilson from building a client portfolio and

caused her "to lose up to ten years of client growth." *Id.* at 6-7.

Finally, Wilson asserts that her loss of income caused her home to be foreclosed upon in

2009, required her to declare bankruptcy in 2010, and hastened the collapse of her marriage in

2011. *Id.* at 7.

In February 2010, when Wilson attempted to take out a new round of student loans for

further educational endeavors, the DOE required her to make additional payments on the

previously paid loan before she would be considered for additional student loans. *Id.* at 3. She

apparently made some additional payments, although it is not clear how much she paid. *Id.* at 8.

On March 2, 2010, Wilson filed a chapter 7 bankruptcy petition in the District of

---

[1] The complaint implies that the DOE started making erroneous credit reports "ten years ago"– in 2001– coinciding with a substantial reduction in Wilson's income around that time. *Id.* at 6.

Nevada.[2] (D.'s Br., #44, Ex. A.)  Her bankruptcy filing does not identify the existence of any

potential claims against the DOE.  (D.'s Br., #44, Ex. A, at 15.)

  Wilson then filed this action in June 2011.  On January 30, 2012, the United States

Treasury provided Wilson a check for $8,565.31 described as a "FED STUDENT LOAN

REFUND" and "RETURN OF PAYMENT ON SATISFIED DEBT PER DEPARTMENT OF

EDUCATION REQUEST."[3]  (P.'s Resp., #55, Ex. C.)  Within a week after providing that check,

the DOE moved to dismiss this action.

## LEGAL STANDARD

**1.    Motion to Dismiss for Lack of Subject Matter Jurisdiction**

  "Federal courts are courts of limited jurisdiction."  *Assoc. of Am. Med. Colleges v. United*

*States*, 217 F.3d 770, 778-779 (9th Cir. 2000) (citation omitted).  Courts presume that a case "lies

outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party

asserting jurisdiction."  *Id.*  Federal Civil Procedure Rule 12(b)(1) allows for a defendant to

challenge subject matter jurisdiction.

  A motion under Rule 12(b)(1) to dismiss for lack of subject-matter jurisdiction may be

either "facial" or "factual."  *See Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing

*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  In a facial attack on subject-matter

jurisdiction, the moving party asserts that a plaintiff's allegations are insufficient on their face to

---

  [2] Wilson's public record bankruptcy filings are properly subject to judicial notice under
Fed. R. Evid. 201.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 fn.6 (9th
Cir. 2006) (The court "may take judicial notice of filings and other matters of public record.")

  [3] Wilson describes this check as an admission by the DOE of liability on the claims
alleged.  She contends that the $8,565.31 check represents a return of her improperly withheld
tax refunds and loan payments she made in 2009 and 2010.

invoke federal jurisdiction, whereas in a factual attack, the moving party disputes the factual allegations that, if true, would give rise to subject-matter jurisdiction. Where a defendant raises a facial challenge to subject-matter jurisdiction, the factual allegations of the complaint are presumed to be true, and the motion may be granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 1 (9th Cir. 2003). By contrast, where a defendant raises a factual challenge to federal jurisdiction, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air v. Meyer,* 373 F.3d at 1039 (citing *Savage*, 343 F.3d at 1039 n. 2). The court "need not presume the truthfulness of the plaintiff's allegations" and the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (citing *White*, 227 F.3d at 1242; *Savage*, 343 F.3d at 1039 n.2.)

"Defective allegations of jurisdiction may be amended, upon terms, in trial or appellate courts." 28 U.S.C. § 1653. It is improper to dismiss an action based on a defective allegation of jurisdiction without leave to amend "unless it is clear, upon de novo review, that the complaint could not be saved by amendment." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n. 6 (9th Cir. 2002) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001)).

2.    **Motion to Dismiss for Failure to State a Claim**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more ...

Page 5 - FINDINGS AND RECOMMENDATION

than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Keams v. Tempe Tech. Inst.*, 39 F.3d 222, 224 (9th Cir. 1994). Moreover, the "court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

In cases involving a plaintiff proceeding *pro se*, this court construes the pleadings liberally and affords the plaintiff the benefit of any doubt. *See Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 623 (9th Cir. 1988). That is, courts hold *pro se* pleadings to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Specifically, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *See Karim-Panahi*, 839 F.2d at 623-624.

## DISCUSSION

The government argues that Wilson's complaint must be dismissed for a number of reasons. First, the government contends that Wilson's first five claims should be dismissed for lack of subject matter jurisdiction. If they are construed as tort claims, the government argues

that Wilson failed to invoke the proper administrative process under the Federal Tort Claims Act, and the government therefore has not waived its sovereign immunity, depriving this court of subject matter jurisdiction. Likewise, if the claims are construed as tax-recovery claims under 28 U.S.C. § 1346(a)(1), the government argues that Wilson failed to first file a required administrative claim with the Secretary of Treasury, again depriving the court of a jurisdictional prerequisite for a federal claim. Finally, the government argues that none of Wilson's claims can be construed as claims under the so-called Little Tucker Act, 28 U.S.C. § 1346(a)(2), providing U.S. district courts with jurisdiction to hear claims under $10,000 against the federal government, because each claim seeks over $10,000 in damages.

Second, even if this Court possessed subject matter jurisdiction, the government posits Wilson's first five claims are also barred by the applicable six-year statute of limitations. Third, the government argues that Wilson's RICO claim must fail because RICO cannot be enforced in a civil action against a federal agency. Finally, the government contends that Wilson's conduct in her bankruptcy action prevents her from bringing these claims now. The government proposes that because Wilson failed to declare her claims against the DOE as assets in bankruptcy she either: 1) lacks standing to bring this action, since her claims became the property of the bankruptcy estate; or 2) is judicially estopped from pursing this action. As discussed more below, most of the DOE's arguments have merit and allowing Wilson to amend her complaint to cure deficiencies identified by the court would be futile.

I.    **Subject Matter Jurisdiction**

     A.    **Tort Claims**

     The doctrine of sovereign immunity is an important limitation on the subject matter

jurisdiction of federal courts. *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1087 (9th Cir.

2007.   Unless Wilson satisfies the burden of establishing that this action falls within an

unequivocally expressed waiver of sovereign immunity by Congress, it must be dismissed. *Id.* at

1088.   The Supreme Court has "frequently held . . . that a waiver of sovereign immunity is to be

strictly construed, in terms of its scope, in favor of the sovereign." *Id.* (quoting *Dep't of the Army

v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999)).

      The Federal Tort Claims Act (FTCA) sets out the limited circumstances in which the

government waives its sovereign immunity for tort suits:

> An action shall not be instituted upon a claim against the United States for money
> damages for injury or loss of property or personal injury or death caused by the negligent
> or wrongful act or omission of any employee of the Government while acting within the
> scope of his office or employment, unless the claimant shall have first presented the claim
> to the appropriate Federal agency and his claim shall have been finally denied by the
> agency in writing and sent by certified or registered mail. The failure of an agency to
> make final disposition of a claim within six months after it is filed shall, at the option of
> the claimant any time thereafter, be deemed a final denial of the claim for purposes of this
> section.

28 U.S.C. § 2675(a).   The requirement to file an administrative claim is jurisdictional. *Brady v.

United States*, 211 F.3d 499, 502 (9th Cir. 2000).   Federal regulations dictate that a tort claim

shall be deemed to have been presented when: "a Federal agency receives from a claimant, his

duly authorized agent or legal representative, an executed Standard Form 95 or other written

notification of an incident, accompanied by a claim for money damages in a sum certain for

injury to or loss of property, personal injury, or death alleged to have occurred by reason of the

incident . . . ." 28 C.F.R. § 14.2.

      Although Wilson does not allege she executed a Standard Form 95, she does assert

making "several written demands for return of these funds," apparently referring to the $5,103.81

withheld from her income tax refunds. (Compl., #2, at 3.) The DOE, however, mounts a factual challenge to the court's subject matter jurisdiction, providing a declaration from Tracey Sasser, its Department Claims Officer, attesting that the DOE has no record of receiving any FTCA claim from Wilson pertaining to this dispute. (Sasser Decl., #45, ¶4.) Wilson responds by submitting a 2002 letter from the DOE responding to a letter Wilson wrote "question[ing] the balance that the U.S. Department of Education (ED) is collecting." (P.'s Resp., #55, Ex. D.) The DOE letter explained the history of Wilson's loan and concluded that the DOE "does not consider the evidence that has been presented sufficient to show that the debit is not owed. We will reconsider our position if additional evidence is presented." *Id.*

Here, Wilson fails to present sufficient evidence in response to the DOE's factual challenge to establish compliance with the FTCA. The DOE letter shows, at most, that Wilson disputed the amount of the loan balance DOE was attempting to collect, but does not indicate that Wilson affirmatively stated a claim for money damages in "a sum certain" as required by 28 C.F.R. § 14.2. Of course, it is possible that Wilson can present the letter she originally sent to the DOE, which might state a claim for a specific amount of money damages sufficient to satisfy 28 C.F.R. § 14.2 .

The DOE argues that the DOE letter also cannot satisfy the FTCA because it is not a final denial, although I find this argument unpersuasive. A federal agency's failure respond to a tort claim by stating that the claim is denied with finality does not permanently bar a party from filing suit. Instead, the party need only wait six months after filing such a claim, after which the agency's failure to make a final disposition within that time "shall . . . be deemed a final denial of the claim" for the purposes of the FTCA. 28 U.S.C. § 2675(a). Thus, filing suit after receiving a

non-final response to a tort claim is only prohibited when the plaintiff initiates the suit without allowing six months to elapse from the date of her initial administrative filing. *See Jerves v. United States*, 966 F.2d 517, 519 (9th Cir. 1992). Here, however, Wilson delayed filing her suit approximately eight years, more than long enough for the DOE's letter to become a final decision, assuming Wilson's initial letter to DOE in 2002 satisfied the FTCA in all other regards.

**B.      Tax-Recovery Claims**

28 U.S.C. § 1346(a)(1) grants a district court subject matter jurisdiction over claims for "the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." Before filing such a suit for tax recovery, however, a plaintiff must first file a claim for refund or credit with the Internal Revenue Service. 26 U.S.C. § 7422(a); 26 C.F.R. § 301.6402-2; *Martinez v. United States*, 595 F.2d 1147, 1148 (9th Cir. 1979). The claim "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof" and "must be verified by a written declaration that it is made under the penalties of perjury." 26 C.F.R. § 301.6402-2(b). Failure to file a claim for a refund which specifies "all grounds and supporting facts upon which a claim for refund is based" deprives the Court of jurisdiction over any claims not pursued before the IRS. *Quarty v. United States*, 170 F.3d 961, 972 (9th Cir. 1999) ("Compliance with these specificity requirements is a prerequisite to subject matter jurisdiction over a claim for a refund.")

Here, Wilson does not allege that she filed a claim with the IRS including a sworn declaration specifying the grounds for a refund and the facts underlying her claim. Moreover, the

representation in her response briefing that her attempts to recover a refund through the IRS

"were referred to the DOE" are not sufficient to satisfy the specific administrative prerequisites

for a tax recovery claim discussed above. (P.'s Resp., #55, at 3.) Therefore, even construing

Wilson's first five claims as tax-recovery claims does not confer subject matter jurisdiction.

### C.    Tucker Act Claims

Finally, under 28 U.S.C. § 1346(a)(2), U.S. district courts and the United States Court of

Federal Claims share concurrent jurisdiction over civil claims against the United State "not

exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or

any regulation of an executive department, or upon any express or implied contract with the

United States, or for liquidated or unliquidated damages in cases not sounding in tort . . . ." The

Court of Federal Claims, however, possesses exclusive jurisdiction for claims arising under the

Tucker Act for damages in excess of $10,000. *United States v. Park Place Assocs.*, 563 F.3d

907, 927 (9th Cir. 2009).

Wilson argues that this court has subject matter jurisdiction over at least her first, second,

and sixth claims, which "do not state any sum of recovery and are based on proof of loss" and

therefore do not seek more than $10,000.[4]  (P.'s Resp., #55, at 4.)   The DOE, however, points to

Wilson's earlier-filed motion for default judgment in this case, which seeks judgment in the

amount of $11,900 for the first claim, $75,000 for the second claim, and $661,900 for the sixth

claim. (P.'s Mot. for Default Judgment, #9.) Wilson's motion for default judgment is not

determinative of the amount she seeks to recover on her claims, since her complaint does not

---

[4] As I discuss below, Wilson's sixth claim, alleging a RICO violation by the federal
government, is not cognizable for other reasons.

Page 11 - FINDINGS AND RECOMMENDATION

actually pray for any particular amount of damages. Nevertheless, Wilson bears the burden to

demonstrate an "unequivocal waiver" of the government's sovereign immunity. *Cunningham v.*

*United States*, 786 F.2d 1445, 1446 (9th Cir.1986). In turn, waiver of sovereign immunity is

coextensive with the statutes conferring federal subject matter jurisdiction. *Park Place*, 563 F.3d

at 927. Thus, in order to show an unequivocal waiver of the government's sovereign immunity,

she must also show unequivocal compliance with 28 U.S.C. § 1346(a)(2), which describes the

limits of this court's subject matter jurisdiction. Her failure to affirmatively allege that claims

one, two, and six seek no more than $10,000 therefore deprives this court of subject matter

jurisdiction over those claims. Of course, Wilson could salvage federal question jurisdiction on

those claims by stipulating not to seek more than $10,000 per claim or by amending her

complaint to explicitly limit her damages for each claim to $10,000, but she has not yet exercised

either of these options. *See Park Place*, 563 F.3d at 927 ("Parties may waive their right to

receive more than $10,000 in order to satisfy the Little Tucker Act and obtain jurisdiction in the

district court.")

### D.    Fair Credit Reporting Act

Although not raised by any party, I feel compelled to note that Wilson's allegations

concerning the DOE's improper credit reporting might have been more effectively pled in

support of a claim under the Fair Credit Reporting Act (FCRA). Although the FCRA, 15 U.S.C.

§ 1681s–2(a)(1)(A), prohibits the furnishing of information "relating to a consumer" to a credit

reporting agency "if the person knows or consciously avoids knowing that the information is

inaccurate," this subsection can only be enforced by federal agencies and certain state officials,

not private individuals. *Blair v. Bank of Am., N.A.*, No. 10–cv–946–SI, 2012 WL 860411, at *8

(D. Or. Mar. 13, 2012) (citing *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059

(9th Cir. 2002)).  However, a different subsection of the FCRA, 15 U.S.C. § 1681s–2(b),

provides that upon receipt of a notice from a credit reporting agency of a dispute, the furnisher of

credit information is required to investigate within specified time limits to determine the

accuracy or completeness of the information provided to the CRA and must modify, delete, or

block reporting information that is inaccurate, incomplete, or cannot be verified.  *Saucedo v.*

*Bank of Am., N.A.*, No. 3:11–cv–00813–MO 2011, WL 6014008, at \*3 (D. Or. Dec. 1, 2011).

This subsection can be enforced by a private plaintiff, who establishes that: (1) the furnisher of

information received notice of the dispute from a credit reporting agency, (2) it failed to perform

a reasonable investigation upon receiving such notice, (3) the failure to investigate was willful or

negligent, and (4) plaintiff was harmed.  *Id.*  Moreover, a plaintiff who identifies the credit

reporting at issue, alleges it was false, includes allegations as to why it was false, alleges that she

tried to explain why it was false but her attempts were ignored, and alleges she was harmed in a

particular way, satisfies the pleading requirements for such a claim, since it would be difficult for

such a plaintiff to explain at the pleading stage "precisely how defendants' follow-up

investigation was negligent or willfully inadequate."  *Id.* at \*4 (denying defendants' motion to

dismiss on credit reporting claims under 15 U.S.C. § 1681 s–2(b)).

## II.    Statute of Limitations

The DOE argues that even if the court otherwise possesses subject matter jurisdiction

over Wilson's first five claims, they are still time-barred.  The applicable statute of limitations

provides that "every civil action commenced against the United States shall be barred unless the

complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a).  A

Page 13 - FINDINGS AND RECOMMENDATION

right of action first accrues when the person challenging the action can institute and maintain a

suit in court. *Alsea Valley Alliance v. Evans*, 161 F.Supp.2d 1154, 1160 (D. Or. 2001) (citing

*Trafalgar Capital Assocs., Inc. v. Cuomo*, 159 F.3d 21, 34 (1st Cir. 1998)). The statute of

limitations set forth in 28 U.S.C. § 2401(a) is not jurisdictional. *See Fadem v. United States*, 52

F.3d 202, 206 (9th Cir.1995), *vacated*, 520 U.S. 1101 (1997)*, reinstated*, 113 F.3d 167, 168 (9th

Cir. 1997).

Defendant notes that since plaintiff alleges DOE first illegally seized a tax refund in 1998

and since she first discovered that seizure two years later, her right of action accrued in 2000 and

was time-barred after 2006. Defendant is correct, as far as the allegations concerning seizure of

Wilson's tax refund. Wilson alleges only that the DOE seized money from her tax returns "on an

irregular basis," without indicating when those seizures occurred. (Compl., #2, at 3.) This

allegation is not specific enough to allow the court to determine whether Wilson suffered any

distinct injury later than June 2005, for which a suit brought in June 2011 would be timely.

Indeed, in briefing Wilson reports that the DOE stopped taking her tax refunds four years after

they began, *i.e.* in 2002. (Pl.'s 2nd Resp., #57, at 2.)[5] If this is true, Wilson cannot possibly

plead a claim based on the seizure of tax refunds that satisfies the statute of limitations.

Similarly, Wilson does not specifically allege when the DOE made its first erroneous

report to the credit bureaus, although the complaint obliquely suggests the reporting occurred

---

[5] Although Wilson's second response is not technically permitted by local rules, I still
consider arguments contained within it, in light of her pro se status and to obviate the need to
address these questions if raised through objections to this Findings and Recommendation.

around 2001.[6]  Nor does the complaint reveal when Wilson first became aware of that negative

reporting, and if, or when, she informed the credit bureaus of a dispute over that report,

potentially triggering the DOE's obligation to investigate and correct the report under the FCRA.

Thus, Wilson's complaint does not allege sufficient facts to show she has satisfied the statute of

limitations for a claim based on the DOE's alleged misconduct regarding credit reporting.

     Wilson's allegation concerning her relatively recent loan overpayments, however,

requires a different analysis.  The DOE argues that Wilson's claim that she was forced to make

duplicative loan payments in 2010 is time barred.  First, the DOE contends that a document

Wilson submitted purportedly showing she has made payments on her loans in the last several

years and thus has been injured as recently as 2010, actually does not provide any proof of

Wilson's payment.  Indeed, that document  merely describes the schedule of Wilson's required

payments starting in December 2009 and ending in November 2019, without indicating Wilson

actually made any of the scheduled payments.  (P.'s Resp., #55, Ex. E.)  However, since the

DOE's argument concerning statute of limitations is not jurisdictional, Wilson need not actually

demonstrate the truth of her allegations in response to the DOE's motion to dismiss.  Instead, in

addressing the DOE's statute of limitations ground for dismissal under Rule 12(b)(6), this court

assumes the truth of Wilson allegations and makes reasonable inferences in her favor, including

the inference that she in fact made unnecessary loan payments as recently as February 2010.  The

---

[6] Wilson's allegation that the DOE "continuously" made erroneous reports to the credit
bureaus does not transform her claim based on improper credit reporting into a continuous tort
for the purposes of the statute of limitations.  As described above, Wilson's claim, if it exists, lies
for a violation of 15 U.S.C. § 1681s–2(b) of the FCRA.  That provision imposes liability on a
furnisher of credit information only for failure to perform a reasonable investigation upon notice
of a dispute from a credit reporting agency, which is a singular omission rather than a continuous
violation.

Page 15 - FINDINGS AND RECOMMENDATION

DOE also argues that even if Wilson made loan payments in 2010, she still discovered that the

DOE had intercepted her tax refunds in 2000, and waited eleven years to file suit. This position

is also unpersuasive. The DOE allegedly forced Wilson to make an overpayment on her student

loan in 2010. This alleged action is completely independent of the DOE's alleged seizure of

Wilson's tax refund, and gives rise to a separate cause of action timely brought in Wilson's

complaint.

     To the extent that some of Wilson's claims were brought outside of the limitations

period, Wilson seems to suggest that a tolling doctrine should apply because she "did not realize"

she had "possession of the documents necessary to pursue this suit" until she moved shortly after

filing for bankruptcy in March 2010. (P.'s Resp., #55, at 4.) Wilson also states that she "had no

knowledge" of her ability to pursue this claim during bankruptcy. *Id.* The traditional doctrine of

equitable tolling applies to the statute of limitations set forth in 28 U.S.C. § 2401(a).

*Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997). However, equitable

tolling of a federal statute of limitations occurs only when "the complainant has been induced or

tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of

Veterans Affairs*, 498 U.S. 89, 96 (1990). Here, plaintiff represents that her own conduct–

failure to locate documents she already possessed and failure to understand her ability to pursue

her claims during bankruptcy– account for her delay in filing, rather than misconduct by the

DOE. Equitable tolling therefore does not apply.

     In sum, Wilson's first five claims as currently pled are time-barred and should be

dismissed, except to the extent they rely on the allegation that the DOE improperly demanded

and received duplicative student loan payments from Wilson in 2010, which is timely. However,

if Wilson could truthfully re-plead facts indicating the government withheld tax refunds or

violated the requirements of a furnisher of credit information under the FRCA after June 2005,

she could cure this deficiency.

## III.    RICO Claim

Defendant argues that Wilson's sixth cause of action, alleging that the DOE violated 18

U.S.C. § 1961 ("RICO"), fails to state a claim upon which relief can be granted. Indeed, "there

can be no RICO claim against the federal government." *Kenner v. Kelly*, No. 10cv2105

BTM(WVG), 2010 WL 5174464, at *1 (S.D. Cal. Nov. 18, 2010) (citing *Berger v. Pierce*, 933

F.2d 393, 397 (6th Cir.1991)); *see United States v. Bonanno Org. Crime Fam. of La Cosa*

*Nostra*, 879 F.2d 20, 23 (2d Cir. 1989). Moreover, Wilson's RICO claim fails for lack of subject

matter jurisdiction because RICO does not include an express waiver of the federal government's

sovereign immunity. *Dees v. Cal. State Univ., Hayward*, 33 F. Supp. 2d 1190, 1201 (N.D. Cal.

1998) (observing that a waiver of sovereign immunity by the United States must be

unequivocally expressed and that the RICO statutes do not indicate that the United States has

waived its sovereign immunity). Therefore, Wilson's sixth claim must also be dismissed. No

additional allegations can cure this deficiency.

## IV.    Effects of Failure to Disclose Claim in Bankruptcy Proceeding

Finally, the DOE argues that even if this court possesses subject matter jurisdiction and

Wilson's claims are timely, the entire suit must still be dismissed for lack of standing or

equitable estoppel because Wilson failed to disclose her potential claim against the DOE during

bankruptcy. Courts require a plaintiff to assert both constitutional standing and prudential

standing. *Dunmore v. United States*, 358 F.3d 1107, 1111-1112 (9th Cir. 2004). Constitutional

standing is satisfied when a plaintiff suffers an injury in fact that is fairly traceable to the

defendant that a favorable decision could likely redress. *Id.* By contrast, prudential standing

requires a plaintiff to assert her own legal interests as the real party in interest. *Id.* Where a

debtor seeking bankruptcy fails to schedule a tax refund claim as an asset on her bankruptcy

petition, the unscheduled claim remains the property of the bankruptcy estate by operation of

statute, even after the court discharges the debtor's debt. *Id.* at 1112. Thus, a plaintiff lacks

prudential standing to bring an unscheduled tax refund claim post-bankruptcy because the

bankruptcy estate, not the plaintiff, is the real party in interest. *Id.*

   The DOE argues that here, just as in *Dunmore*, Wilson's failure to schedule her potential

claims against the DOE during bankruptcy effectively transferred those claims to the bankruptcy

estate, depriving Wilson of prudential standing.[7] Wilson responds that the bankruptcy referee

stated her student loan would not be considered and separated the loan from the bankruptcy

proceeding. She presents no evidence supporting this representation, however, and even if she

did, the *claims* resulting from the DOE's alleged misconduct in collecting the loan are at issue

here, not the student loan debt itself. Wilson also implies that her claims against the DOE were

other assets that can properly be exempted from a bankruptcy estate under 11 U.S.C. § 522(b)(3).

But there is no indication that Wilson actually exempted her potential claims against the DOE

from the bankruptcy estate. In fact, Wilson's bankruptcy filing asserted that she had no

---

[7] Defendant's argument presumes that Wilson's bankruptcy proceeding has terminated with a discharge of Wilson's debt. There is no evidence in the record that this has occurred, although Wilson's response briefing implies that bankruptcy proceedings have terminated. However, I need not rely on such an implication because I take judicial notice of the fact that Wilson was discharged as a debtor and her bankruptcy case terminated in June 2010. Discharge of Debtor and Final Decree, *In re Estate of Wilson*, Case No. 10-13350-lbr (Bankr. D. Nev. 2010) (EFC Nos. #16, #18).

Page 18 - FINDINGS AND RECOMMENDATION

"contingent and unliquidated claims . . . including tax refunds, counterclaims of the debtors, and rights to setoff claims." (D.'s Br., #44, Ex. A at 15.) Finally, Wilson has not alleged facts to meet the requirements of Fed. R. Civ. P. 17(a), which would allow her to cure her standing defect by showing both that the bankruptcy estate ratified her lawsuit by affirmatively abandoning her claims against the DOE and that her decision to sue in her own name represented an "understandable mistake and not a strategic decision." *See Dunmore*, 358 F.3d at 1112-1113. Nor could she possibly allege such facts in an amended pleading, because the bankruptcy trustee explicitly stated that the bankruptcy estate abandoned no assets. Chapter 7 Trustee's Report of No Distribution, *In re Estate of Wilson*, Case No. 10-13350-lbr (Bankr. D. Nev. 2010) (EFC No. #11). Consequently, Wilson lacks prudential standing to bring this suit against the DOE.

Wilson's failure to schedule these claims during bankruptcy proceedings also requires dismissal of these claims under the doctrine of judicial estoppel. As explained in *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001), a plaintiff is "precluded from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings, and that a discharge of debt by a bankruptcy court, under these circumstances, is sufficient acceptance to provide a basis for judicial estoppel . . . ." *Id.* at 784.

## V.    Efficacy of Amendment

Wilson is entitled to notice of the deficiencies in her complaint and the opportunity to amend to cure them, unless amendment would be futile. Even if Wilson could amend her complaint to allege sufficient facts supporting subject matter jurisdiction or showing compliance with the statute of limitations, as suggested above, her failure to disclose her claims in bankruptcy definitively bars her from bringing them now. Accordingly, this action should be

dismissed with prejudice, since granting Wilson leave to re-plead would be futile.

## CONCLUSION

For the foregoing reasons, defendant United States Department of Education's motion to dismiss (#43) should be granted and Wilson's claims should be dismissed with prejudice. Judgment should be entered accordingly.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 24th day of April, 2012.

Honorable Paul Papak
United States Magistrate Judge